# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| Zloro Johnson, et al., | : | Case No. 1:05CV1094 |
| | : | |
| Plaintiffs | : | Judge Solomon Oliver, Jr. |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Midland Credit Management, Inc., et al., | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| Defendants | : | |

This action is before this Court upon separate orders of District Judge Oliver referring plaintiffs' Motion To Compel Discovery and Sanctions (Doc. #33) and Motion For leave To File Second Amended Complaint (Doc. #34).[1]  The motion for leave to amend will be addressed first, as its resolution impacts upon the motion to compel.

This action was initiated in state court on March 18, 2005, and removed to this federal court on April 29, 2005.  The initial complaint was on behalf of plaintiff Johnson only (with class allegations) and rested upon the single claim that a collection letter directed to him in January 2005 violated 15 U.S.C. §1692, in that "There is no information within the letter describing the nature of the debt, how or for what it was incurred, or proof of indebtedness.  The letter does not inform Johnson of his rights under the FDCPA to dispute the validity of the debt or the obligation of the

---

[1]Neither of these motions is of the nature excepted from a magistrate judge's authority to "hear and determine" pursuant to 28 U.S.C. §636(b)(1)(A).  Therefore, the referrals are deemed to be pursuant thereto, with the standard of review by Judge Oliver as provided thereunder.  As the referral of the motion for leave to amend specified that it was for "an expedited ruling" and because this Court will be away from February 1st to the 13th, this decision will be somewhat abbreviated and directly to the point.

debt collector to obtain verification of the debt."

The class which he sought to represent was "All persons and entities who received within the past year, identical or substantially similar communications from Defendants, alleging a debt owed to a third party and seeking to collect that debt."[2]  The relief sought included a declaratory judgment that the conduct complained of violated §1692g, an injunctive order prohibiting defendants from attempting to collect debts in a manner which violated that statute, actual damages, statutory damages pursuant to 15 U.S.C. §1692k, and reasonable costs and attorney fees.

On May 25, 2005 an amended complaint was filed adding Mr. Feyedelem as a named plaintiff.[3]  The thrust of the amended complaint was the same as the original—that defendants sent a collection letter lacking the validation information required by §1692g—with it being alleged that in March 2005 Mr. Feyedelem had received a deficient letter comparable to that which had been sent to Mr. Johnson.  The class sought to be represented and the relief sought on behalf of the class was the same as that asserted in the original complaint.[4]

The proposed second amended complaint completely changes the nature and scope of the action.

Rather than being predicated upon the contention that the defendants failed to send a letter containing validation information in the first instance, the pleading now alleges that collection letters

---

[2]While the certification sought was pursuant to the Ohio Rules of Civil Procedure it is not clear from the complaint whether the proposed class was state wide or national, but it appears to this Court more likely that it was to be nationwide.

[3]Because no responsive pleading had yet been filed that amendment was as a matter of right pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

[4]Also carried forward from the original complaint was a request for certification under the Ohio Rules of Civil Procedure, although the action was then governed by the Federal Rules.  Again, there was a lack of clarity as to the question of state-wide versus nation-wide class.

were sent to both defendants which "allegedly contained the validation information required by the FDCPA," but that as to plaintiff Johnson "This letter was mailed to Johnson at an incorrect address and was returned in the mail as undeliverable.  Defendant's records clearly indicate this fact, yet Defendants continued debt collection activities through later contacts with Johnson, never providing him with the information contained in the undelivered letter."  With regard to plaintiff Feyedelem it is alleged that he was also sent a letter containing the requisite validation information but that he "did not receive this letter, although there is no indication that it was returned to Midland in the mail," and that he thereafter received another letter lacking validation information.

Appearing for the first time are averments pertaining to events alleged to have occurred after the sending of collection letters.  Those are:

## CLASS ACTION ALLEGATIONS

14.   When Johnson received Exhibit A, he immediately telephoned the number written o the letter.  Johnson told the Midland employee that he did not owe this debt.  The Midland employee answering Johnson's call did not inform him of his rights to dispute the validity of the debt and insisted that Johnson pay it.

\*     \*     \*

19.   Midland's records indicate that an employee of Midland engaged in a phone conversation with Feyedelem on January 20, 2005.  The Midland employee documented in Midland's records that Feyedelem verbally disputed the debt and stated it was paid off a couple of years ago.

\*     \*     \*

23.   Midland's records document that Feyedelem has stated on two other occasions that he does not owe this debt because it had been paid previously.  These telephone conversations occurred on March 23, 2005 and April 4, 2005.

24.   Despite Feyedelem's protestations that Midland was attempting to

3

collect a debt that had previously been paid in full, Midland's records indicate that no further action was taken by Midland to investigate the validity of this debt.

25. Feyedelem was not aware of his right to request in writing that Midland obtain verification of the debt because he did not receive the January 18, 2005 letter allegedly mailed to him by Midland containing this information, nor did any of the Midland employees to whom Feyedelem stated that the debt was not valid inform him of this right.

26. Midland continued its collection activities on Feyedelem's alleged debt after noting in its account records that there was a verbal dispute regarding the validity of the debt.

In place of the single class sought to be represented under the original and first amended complaints the proposed second amended complaint seeks to represent two different classes:

30. Johnson maintains this action, pursuant, in part to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on his own behalf and on behalf of a Class of Plaintiffs ("Class A") defined as:

> All persons and entities who were sent a letter from defendants, within the past year, alleging a debt owed to a third party and seeking to collect that debt that notified them of their right to dispute the validity of the debt within 30 days and/or to request in writing that Defendants obtain verification of the validity of the debt before continuing collection activities, which was returned in the mail to Defendants and who were subsequently mailed another letter seeking to collect that debt that did not notify them of their right to dispute the validity of the debt within 30 days and/or to request that Defendants obtain verification of the validity of the debt, which subsequent letter was not returned in the mail to Defendants. Excluded from this Class are employees, officers, directors, legal representatives, heirs, successors, and assignees of Defendants.

31. Johnson and Feyedelem maintain this action pursuant, in part, to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure on their own behalf and on behalf of a Class of Plaintiffs ("Class B") defined as:

4

All persons and entities who were contacted by Defendants seeking to collect a debt owed to a third party in the last year who verbally disputed the validity of the debt within 30 days of contact, where Defendants took no further action to investigate or find some evidence of the debts's validity before continuing collection activities. Excluded from the class are employees, officers, directors, legal representatives, heirs, successors, and assignees of Defendants.

32. The Classes, as defined in ¶ 30 and ¶31 are identifiable. The definitions of the Classes are unambiguous. Johnson is a member of Class A. Johnson and Feyedelem are Members of Class B. The Class Members can be identified using Defendant's customer lists, computer files, and other information kept by Defendants in the usual course of business. Records kept by Defendants will identify the Class Members. The Class Members can be notified of the class action through publication and mailings to address lists maintained in the usual course of business by Defendants.

33. The Class Members are so numerous that their individual joinder is impracticable. While the exact number of the Class is unknown, it is surely in the thousands, given Defendant's 2.8 billion dollars in revenue realized in 2002 from debt collection. Joinder is presumptively impractical where, as here, there are more than 40 class members.

34. Common questions of law and fact predominate over the issues affecting only individual Class Members. Some of the common legal and factual questions include:

35. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Members of Classes A and B. Similar or identical policies and procedures for debt collection purposes are involved. Individual questions, if any, pale by comparison to the numerous common questions that dominate.

36. The injuries sustained by Johnson and Members of Class A flow, in each instance, from a common nucleus of operative facts: the failure of Defendants to properly monitor their mailing activities to send the required written communications mandated by the FDCPA on subsequent contacts, once an initial validation letter was returned in the mail. In each case, Defendants' failure to send another notice with the language mandated by the FDCPA to a

correct address failed to satisfy the requirements of the FDCPA.

37. The injuries sustained by Johnson, Feyedelem and all Members of Class B flow, in each instance, from a common nucleus of operative facts: lack of adequate procedures used by Defendants upon receiving  a verbal dispute of the validity of a debt.  In each case, Defendants' disregard of the disputed debt and continuation of collection activities without further investigation failed to satisfy the requirements of the FDCPA.

The relief sought is:

### PRAYER FOR RELIEF

**WHEREFORE**, the individual and Named Plaintiffs Johnson and Feyedelem, on behalf of themselves and all others similarly situated, prays for the following relief:

a. An order certifying the action to be maintained as a class action under the Ohio Rules of Civil Procedure and appointing Johnson, Feyedelem and their undersigned counsel to represent the Class;

b. A temporary, preliminary, and/or permanent order enjoining Defendants from attempting to collect debt in manners which violate §1692g of the FDCPA;

c. Actual damages;

d. Statutory damages pursuant to 15 U.S.C. §1692k;

e. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692k;

f. Such other and further relief as this Court may deem necessary or proper.

For a variety of reasons this Court will deny the motion for leave to amend.

While it is the basic rule under Rule 15(a) of the Federal Rules of Civil Procedure that leave to amend should be freely given, one of the reasons for declining to do so is when it appears that there has been undue delay in advancing the claim sought to be asserted, and this is particularly true

6

when that claim significantly alters the parameters of the action.

This Court believes that this rationale plainly applies to the claim premised upon the contacts between plaintiffs and defendants' representatives set out in paragraphs 14, 19 and 23 through 26 of the proposed second amended complaint, which underlie the "Class B" class allegations.  The plaintiffs were certainly aware of their contacts with defendants representatives when the initial complaint was filed on April 4, 2005 and when the first amended complaint was filed almost two months later, yet they did not come forward with this theory of unlawful conduct until December 8, 2005.  It is disingenuous to suggest that this eight month gap is attributable to newly discovered evidence, as plaintiffs now appear to assert.

As no reasonable explanation is offered to account for failing to advance this claim in a timely manner, this Court finds that the failure to do so warrants denial of amendment to advance it at this time.  Cf., Rent-A-Center, Inc. v. 47 Mamaroneck Avenue Corp., 215 F.R.D. 100, 103-104 (S. D. NY 2003); Arrington v. Dickerson, 915 F.Supp. 1516, 1521 (M. D. AL 1996); Wine v. EMSA Limited Partnership, 167 F.R.D. 34, 39-40 (E. D. PA 1996); Bellairs v. Coors Brewing Co., 907 F.Supp, 1448, 1459-1460 (D. CO 1995).  See also, Leary v. Daeschner, 349 F.3d 888, 904-909 (6th Cir. 2003) (good cause must be shown for seeking amendment beyond the date fixed in a case management order).

Further, it is patent to this Court that such a claim is inappropriate for consideration in a class action, for the reason that commonality cannot exist.  Each instance of a verbal dispute as to the validity of a debt and what action was taken by defendants in the face of a denial by the alleged debtor would have to be explored on a case by case basis.  This calls for rejection of the amendment on the basis of futility insofar as representation of the proposed class is concerned.

While it might seem as though this determination infringes upon the authority of Judge Oliver to determine whether a class should be certified, in <u>Foman v. Davis</u>, 371 US 178 (1962), the Supreme Court stated that among the consideration (including undue delay) which can properly support rejection of a Rule 15 motion is "futility of amendment."  It is, therefore, appropriate for this Court to look at the question of whether the proposed amendment asserting a class claim is doomed to fail.[5]

Turning to the other aspect of the proposed amendment, it would appear that the shift from the "no proper initial notice" claim to the "no proper follow-up to a returned initial notice" claim is as a result of depositions of defendants' representatives taken in October.  As it also appears that the delay in taking those depositions is not entirely attributable to plaintiffs, undue delay is not a bar to assertion of this claim.

Therefore, insofar as the proposed second amended complaint is intended to assert a claim for relief on behalf of plaintiff Johnson individually, i.e. via paragraphs 10-13 and 41-42, it could be permissible.

The problem which arises is with regard to the class ("Class A") which Mr. Johnson wishes to represent.

This Court believes that at this point in this action the plaintiff should be able to at least make a prima facie showing that a class may be viable, in order to amend the complaint a second time and create a posture where a motion for class certification has a possibility of success.  This Court does not consider that this has been done, and, in fact, that the evidence which is of record points to a contrary conclusion.

---

[5]This Court has no doubt that Judge Oliver will have the opportunity to consider this issue when the inevitable objections to this Court's ruling are brought before him.

8

When the defendants' representatives were deposed in October the subject of how returned mail was followed up was, to some extent, gone into.  From that testimony it appears to this Court that there was no uniform policy or practice.  This would bear heavily on the issue of commonality.

What was not gone into with them was the question of the volume of returned mail during the relevant one year period.  This leaves wide open the issue of numerosity, which plaintiff must demonstrate in support of the vehicle of class action.

If this Court was inclined to credit the supposition advanced by plaintiff that simply by reason of the volume of business done by defendants the volume of returned mail must be high, this poses the question of how the potential members of a class whose validation letters were "returned in the mail to Defendants and who were subsequently mailed another letter seeking to collect that debt that did not notify them of their right to dispute the validity of the debt within 30 days and/or to request that Defendants obtain verification of the validity of the debt" could be identified.  Plaintiff has presented nothing to substantiate the contention that this could readily be done "using Defendants' customer lists, computer files, and other information kept by Defendants in the usual course of business" and, unlike the plaintiff, this Court is not willing to speculate that this is so.

This Court, therefore, will not allow the proposed amendment insofar as it seeks to advance a class claim on behalf of "Class A."[6]

With this determination on the motion to amend, plaintiffs' motion to compel must be assessed in light of the violation of 15 U.S.C. §1692g asserted in the amended complaint, that being defendant's failure to provide a proper validation notice in an initial collection letter sent to them,

_____

[6]If plaintiff Johnson wishes to pursue an individual claim predicated upon his claim of improper follow-up to returned mail he may do so by promptly presenting another motion for leave to amend in conformity with this Court's ruling on the instant motion.

and the class sought to be represented based thereon, which is individuals who in the period January 15, 2004 (one year before Mr. Johnson received his letter) to April 4, 2005 (when this action was commenced) received "identical or substantially similar communications from Defendants."[7]

Before addressing the substance of the motion, this Court feels compelled to comment upon what this Court considers to be a blatant attempt to prejudice the Court's perception of the defendants—the inclusion as exhibits to the motion of a motion to compel and of a motion to show cause filed against Midland in two other actions.  The fact that such motions were filed means nothing to this Court.  If plaintiffs had also presented rulings by the courts to whom those motions were presented containing some indication that those courts concluded that Midland had acted improperly that might have engaged this Court's attention.  As it is, this Court considers this tactic to be little more than a cheap trick.

Turning to the substance of the motion, considering that violations of §1692g are governed by a one-year statue of limitations this Court considers the "relevant time period" designated for plaintiffs' interrogatories and requests for production of "from January 1, 2003 to the present" to be generally inappropriate.  This Court does not find plaintiffs' argument for extending the period back more than a year on an overall basis to be persuasive.

Moving on to the particular discovery requests at issue, this Court finds few of them to satisfy the standard of reasonably calculated to lead to the discovery of admissible evidence germane to the limited issue of whether defendants failed to send alleged debtors initial collection letters containing proper validation notices.

---

[7]If as appears possible from the proposed second amended complaint such claim will no longer be pursued addressing the motion to compel may be a pointless exercise, but unless and until it is dropped this Court must engage in that exercise.

Interrogatory 11, the first at issue under plaintiff's motion, is a prime example.  It asks defendants to "Describe the records kept by Midland Credit Management, Inc. in the maintenance of customer accounts, including records of contacts made, letters sent, phone calls received, customer inquiries, payments made and internal communications and documentation."  Clearly, the only part of this which could be deemed proper is that inquiring of the record keeping practices as to initial letters sent, and this Court will grant the motion to that limited extent.[8]

Interrogatory 12 asked defendants to identify all employees of Midland who dealt with plaintiffs' accounts and described in detail what each did.  This Court sees no possible bearing of such information on the question of the adequacy of the collection letters sent plaintiffs, and will deny the motion in this regard.

Interrogatory 17 falls victim to the same vice of lack of demonstration of possible relevance, and it too will be rejected.

Interrogatory 22 calls upon defendants to "state in detail the facts upon which you base your denial of paragraphs #6, 9, 10, 15, 16 and 22 of Plaintiffs' First Amendment Class Action Complaint."[9]

Paragraph 6 of the amended complaint alleged facts regarding the relationship between the defendants and the nature of their business.  A naked "denied as untrue" is neither "explained or self-explanatory," as defendants objection thereto status.  If the facts alleged in paragraph 6 are to be controverted plaintiffs are entitled to know the basis of such denial, and the motion will be

---

[8]This Court will, however, observe that the inclusion in the all encompassing objection made to this interrogatory of attorney-client privilege and work-product doctrine was inane.

[9]While this interrogatory and those which succeed it do exceed the number allowed under Rule 33(a) of the Federal Rules of Civil Procedure, this Court will not enforce that limitation.

granted as to paragraph 6.

The same applies to the "denied as untrue" response to paragraph 9.

While the responses to paragraphs 10, 15, 16 and 22 are not models of clarity, this Court will not require further responses thereto.

Interrogatory 22 reads "Please state in detail the facts upon which you rely for each affirmative defense listed in your Answer."

Defendants' response to the first amended complaint asserts eighteen affirmative defenses, most of which , in this Court's opinion, are not affirmative defenses.  Primary among those are numbers 2 through 7, which challenge the propriety of this action going forward on a class basis. As it is the plaintiffs' burden to demonstrate that a class should be certified asserting that they cannot do so is not an affirmative defense, as to which the defense would carry a burden of proof. The motion will be denied as regards these non-affirmative defenses.

The same is true as to "affirmative defenses" 1, 8, 12, 13, 14 and 15, and the motion is denied as to them.

On the other hand, it appears to this Court that the defenses asserted in paragraphs 9, 10, 11, 16, 17 and 18 are properly considered as affirmative defenses, and that they are not, as the objections thereto asserted, "self explanatory."  If defendants are going to stand on those defenses plaintiffs are entitled to know the factual basis for them.  If including them in the pleading was a "knee jerk" proposition, defendants should say so and now disclaim them.  The motion will be granted as to these items.

Interrogatory 23 is appropriate, as it is specifically directed to how the collection letters sent to the plaintiffs were generated, and plaintiffs are entitled to a better answer than the plaintiffs'

collection notes "will explain the process that resulted in the sending of various letters to the plaintiffs."   The motion will be granted as to this interrogatory.

Moving on to plaintiffs' requests for production, having defined an overly broad time period to begin with, plaintiffs then went even further in Request No. 3 by asking for "all form letters, enclosures, envelopes, memoranda, etc. used by Midland Credit Management, Inc. in its debt collection activity during the last five years."  While this Court considers this request overly broad as to subject matter and time frame, this Court is also not satisfied with defendants response. Defendants will, therefore, be ordered to produce all form initial collection letters utilized in the time period January 15, 2004 forward.

Request No. 5 will be granted as to litigation alleging violations of §1692g by failing to send proper validation notices pertaining to the years 2003 to the present, the rationale for going back beyond January 15, 2004 being to determine if allegedly inadequate notices issued prior to that date were modified thereafter.

This Court is not satisfied with defendants' response to Request No. 9.  With the stated limitation thereof that it only seeks documentation "regarding use of its collection notices or letters similar to those sent to Plaintiffs" the objection that production of documents not pertaining to validation notices such as plaintiffs maintain they should have received is unwarranted.  To the extent that this request calls for production of defendants' internal documents regarding such notices for the period 2003 forward[10] it will be granted.

Request No. 10 is plainly overly broad, and this Court is not inclined to recast it.  If, as appears from plaintiffs' brief, what they were seeking to learn was the number of collection letters

---

[10]Again, going back into 2003 will allow for a determination whether revision of such notices because of alleged shortcomings therein had been considered.

13

comparable to those sent plaintiffs which were mailed by defendants during the limitations period that information could, and should, have been sought by way of a narrow interrogatory, not an overly broad request for production.  The motion will be denied as to this request.

Request No. 11 relating to the subject of validation of debts generally and not whether initial collection letters contain proper validation information, the motion will be denied as to this request.

Requests Numbers 16, 17, 18, 19, 20 and 21 will all be denied as being much too broad, considering the narrow scope of the alleged violation of §1692g underlying this action.

In summary, plaintiffs' motion for leave to file a second amended complaint is denied, and their motion to compel is granted in part and denied in part, with the request for sanctions denied.

**IT IS SO ORDERED**


                                        s/DAVID S. PERELMAN
                                        United States Magistrate Judge


DATE:   January 30, 2006

14